IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY BOCZKOWSKI, 0553913, ) | |
|     Petitioner, ) | |
| ) | |
|     v. ) | 2:10-cv-34 |
| ) | |
| MR BUTCH JACKSON, et al., ) | |
|     Respondents. ) | |

MEMORANDUM and ORDER

Mitchell, M.J.:

Timothy Boczkowski, an inmate at the Nash Correctional Institution at Nashville, North Carolina, has presented a petition for a writ of habeas corpus. For the reasons set forth below, the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

Although incarcerated in North Carolina, the petitioner here seeks to challenge his life sentence imposed following his conviction by a jury of criminal homicide at No. CC199415431 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on September 16, 2004.[1]

Boczkowski filed a timely post-conviction petition in the Court of Common Pleas and

---

[1] The petitioner was originally sentenced to death on May 6, 1999, but on statutory review, while affirming the judgment of conviction, the Pennsylvania Supreme Court vacated the death sentence and ordered that a life sentence to be imposed due to the impropriety of acts of the Commonwealth in presenting evidence of an aggravating circumstance. Com v. Boczkowski, 577 Pa. 421 (2004). Accordingly, a life sentence was imposed on September 16, 2004. See: ¶¶ 1-10 of the petition.

relief was denied on December 10, 2007.² An appeal was taken to the Superior Court in which the issues raised were:

> I(A). When the Commonwealth has unlawfully extradited a defendant and this unlawful extradition leads to the only aggravating circumstance that allows a capital trial, does the death qualification of the jury violate a multitude of the defendant's constitutional rights?
>
> I(B). Does the death qualification process cause jurors to be more conviction prone and does it remove jurors who are more likely to question the Commonwealth's case and, if so, does this violate the state and federal constitutions?
>
> I C Should the lower court have permitted Mr. Boczkowski to present his proffered evidence concerning the research that shows how death qualification prejudices a defendant?
>
> I(D). Was appellate counsel ineffective by asking that Mr. Boczkowski be restored to the status quo ante before the unlawful extradition, but then seeking relief that did not actually return him to the status quo ante (i.e., a new trial)?
>
> II(A). When an unlawful action by the Commonwealth acts to prevent a defendant from testifying at his trial, is this decision to forgo this crucial evidence made knowingly and voluntarily?
>
> II(B). Was appellate counsel ineffective for failing [to] make this argument on direct appeal?
>
> III(A). When an unlawful action of the Commonwealth acts to prevent a defendant from presenting character evidence, is this decision to forgo this crucial evidence made knowingly and voluntarily?
>
> III(B). Was appellate counsel ineffective for failing [to] make this argument on direct appeal?
>
> III C. Did the lower court err by preventing Mr. Boczkowski from presenting the testimony of one of the proffered character witnesses?
>
> III(D). Was post-conviction counsel ineffective for failing to give proper notice of

---

² See: Petition at ¶ 12.

2

this character witness?[3]

On July 15, 2009, the denial of post-conviction relief was affirmed.[4] Leave to appeal to the Pennsylvania Supreme Court raising these same issues was sought,[5] and leave to appeal was denied on December 14, 2009.[6]

The instant petition was executed on December 22, 2009. In it, Boczkowski contends he is entitled to relief on the following grounds:

> 1. The Commonwealth unlawfully extradited the petitioner to North Carolina so that the conviction obtained there could be used as the sole aggravating factor in the penalty phase of his Pennsylvania trial.
>
> 2. That as a result of this action, the Pennsylvania Supreme Court reversed the death penalty and imposed life in prison but because the jury was death qualified, Boczkowski was not tried by a jury of his peers.
>
> 3. The increase in the Commonwealth's peremptory challenges from seven to twenty eliminated non death qualified jurors.
>
> 4. The North Carolina conviction prevented the petitioner from testifying on his own behalf and presenting character witnesses in his Pennsylvania trial in that prior to the North Carolina conviction the petitioner had never had a criminal conviction.
>
> 5. The Commonwealth improperly invoked the petitioner's right to a speedy trial so that the North Carolina trial proceeded prior to the Pennsylvania trial.
>
> 6. The PCRA court denied the petitioner the right to present his proffered evidence regarding the impact of a death qualified jury on the finding of guilt.
>
> 7. The PCRA court erred in denying him the opportunity to present character

---

[3] See: Exhibit 9 to the answer at p.4.

[4] See: Exhibit 10 to the answer.

[5] See: Exhibit 12 to the answer at p.4.

[6] See: Exhibit 11 to the answer.

witness, Louise Hurley.

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court

of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In <u>Bronshtein v. Horn</u>, 404 F.3d 700, 723 (3d Cir.2005), cert .denied 546 U.S. 1208 (2006), the Court held:

> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

In the instant case, it would appear that the core issue which the petitioner raises here, that is the impropriety of selecting a death qualified jury, caused him to be denied a fair trial, and that counsel was ineffective for failing to raise this issue.

The background to this prosecution is set forth in the March 23, 2004 Opinion of the Pennsylvania Supreme Court:

> [O]n November 7, 1994, appellant summoned paramedics and police to his home in Ross Township, Pennsylvania. The first police officer to arrive at the scene found appellant attempting to revive his thirty-six-year-old wife, Maryann

5

Boczkowski, who was unconscious in the couple's hot tub. Appellant, police officers and paramedics removed Maryann from the hot tub and attempted to revive her, but they were unsuccessful. Maryann was transported to Allegheny General Hospital at appellant's request, rather than to the closest hospital. There, she was pronounced dead. An autopsy revealed that Maryann's death was caused by asphyxiation, resulting from blunt force trauma to her neck. The autopsy also showed numerous points of trauma of recent origin on Maryann's body and head, including hemorrhages on her neck and bruises on the interior of her scalp, which were inconsistent with the treatment she received in the attempts to revive her. Maryann's blood alcohol level at the time of her death was .22 percent.

Meanwhile, a physical examination of appellant revealed fresh scratch marks on his arms, sides and hands. In addition, before Maryann was taken to Allegheny General Hospital, appellant spontaneously told police: "I hope they don't try to put this on me." Later, after voluntarily accompanying police to the Ross Township Police Department, appellant nodded in the affirmative when officers asserted that he had been involved in his wife's death.

Trial testimony also established that in the months preceding Maryann's death, appellant had attempted to portray her to friends as an alcoholic. Maryann's longtime friends, however, testified that they rarely saw Maryann intoxicated. In addition, appellant stipulated that he was the beneficiary of a $100,000 life insurance policy on Maryann's life. Appellant also made incriminating statements to fellow inmates at the Allegheny County Jail, admitting his culpability for the deaths of both Maryann and his previous wife, Elaine, and responding to an inmate query regarding why he had killed both wives in the same manner with, "I don't know. That was stupid, wasn't it?"

577 Pa. at 432.

The Pennsylvania Supreme Court succinctly summarized the critical issue before that Court:

> Appellant argues that Judge Durkin's order staying extradition was a valid one that was never lifted, vacated or modified by any court.[7] Therefore, the District Attorney's Office had no authority to act in contravention of that order and transfer appellant to North Carolina before the Pennsylvania charges were disposed. Had appellant not been unlawfully transferred to North Carolina, the factual basis for the single aggravating circumstance would not have existed and

---

[7] The extradition involved the then pending North Carolina homicide charges involving petitioner's first wife, Elaine.

appellant would not have been eligible for the death penalty.

577 Pa. at 463.

The Pennsylvania Supreme Court agreed with this argument and as a result vacated the death sentence and remanded the matter for the imposition of a life sentence. However, unanswered at that time was whether as a result of a case which should not have been treated as a capital case, the petitioner was prejudiced by the selection of a death qualified jury. This issue was clearly presented to the courts of the Commonwealth in the post-conviction proceedings. Thus, as the Commonwealth observes:

> Petitioner claims that he was denied a fair trial because the jury was death-qualified and that prior counsel was ineffective for failing to raise this issue. Specifically, petitioner alleges that the death-qualified jury prejudiced him, restructured voir dire (increasing the Commonwealth's peremptory challenges), affected his ability to call character witnesses and/or testify on his own behalf. Petitioner also asserts that the aggravating circumstance was "manufactured" by the Commonwealth.[8]

In <u>Lockhart v. McCree</u>, 476 U.S. 162, 175-176 (1986) the Court held:

> "Death qualification," unlike the wholesale exclusion of blacks, women, or Mexican-Americans from jury service, is carefully designed to serve the State's concededly legitimate interest in obtaining a single jury that can properly and impartially apply the law to the facts of the case at both the guilt and sentencing phases of a capital trial. There is very little danger ... that "death qualification" was instituted as a means for the State to arbitrarily skew the composition of capital-case juries (footnotes omitted).

The Court then continued:

> [T]he constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case.

---

[8] See: Answer at p.16.

7

476 U.S. at 184.

In Buchanan v. Kentucky, 483 U.S. 402 (1987), the Court held that the joint trial of a capital defendant and a non-capital codefendant before a death qualified jury did not violate the Sixth Amendment entitlement to a fair and impartial jury. Thus, there is no showing here that the fact that the petitioner was originally tried before a death-qualified jury in any way barred him from receiving a fair and impartial jury as guaranteed by the Sixth Amendment.

The petitioner also contends that trial counsel was ineffective for failing to challenge his conviction by a death-qualified jury.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987). As a result, if a petitioner fails on either prong, he

loses. Holladay v. Haley, 209 F.3d 1243, 1248 (11th 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.") .

In the present case, counsel cannot be deemed ineffective for failing to raise a non-issue, and thus counsel's performance did not fall below an objective standard of reasonableness.

Because there is no showing here that petitioner's conviction was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court, he is not entitled to relief here. Accordingly, the petition of Timothy Boczkowski for a writ of habeas corpus will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

ORDER

AND NOW, this 28th day of June, 2010, for the reasons set forth in the foregoing Memorandum, the petition of Timothy Boczkowski for a writ of habeas corpus is dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is denied.

s/ Robert C. Mitchell  
United States Magistrate Judge